**In re BARLOWS, INC., W.H. Frank Associates, Inc., Barlow's Equipment Co., Inc., Debtors.**

**BARLOWS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy Nos. 82–01506–A, 82–01606–A and 83–00082–A.**

**Adv. No. 83–0143–A.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Feb. 8, 1984.

Francis P. Dicello, Hazel, Beckhorn & Hanes, Fairfax, Va., for debtors.

Gregory S. Hrebiniak, Tax Div., U.S. Dept. of Justice, Washington, D.C., Elsie L. Munsell, U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

The plaintiff, Barlows Inc. ("Barlows"), would have the Court direct that the United States of America, as represented by the Internal Revenue Service ("United States or IRS"), reduce its liens and claim for taxes in the amount of $102,544.89 as of August 16, 1982 and, in addition, reduce any claimed interest on such taxes subsequent to that date. The issue, by agreement, has been submitted on briefs and a stipulation of the facts.

The plaintiff is a residential and commercial remodeling and construction firm. On

November 30, 1982, Barlows filed a Petition under Chapter 11 of the Bankruptcy Reform Act of 1978 in this Court. The United States has filed a Proof of Claim in the amount of $361,147.99. The Proof of Claim consists, in part, of an assessment for withholding and Federal Insurance Contribution Act (FICA) taxes for the taxable period ending June 30, 1982. The IRS duly and properly filed a notice of federal tax lien on August 4, 1982 indicating an unpaid balance of assessment of $152,841.23. The Proof of Claim also reflects an assessment for withholding and FICA taxes for the taxable period ending March 31, 1982. The IRS also properly filed a notice of the federal tax lien on July 29, 1982, indicating an unpaid balance of assessment of $165,-988.57. The United States has imposed interest on all taxes due up to the November 30, 1982 petition date.

The Proof of Claim and the Stipulation of Facts also indicate that at the time of the IRS filing of a notice of a federal tax lien Barlows had a fully-earned account receivable due from Western Development Corporation (Western) in the amount of $102,-544.89. On August 16, 1982, prior to the filing of the bankruptcy petition, the IRS, acting on information supplied by plaintiff's personnel, caused a levy to be served upon Western for the account owing to Barlows. The IRS caused notice of seizure of the account receivable to be served on plaintiff. Without plaintiff's participation, the IRS and Western established a payment schedule. After paying $27,000.00 to the IRS, Western defaulted on the payment agreement. The IRS credited the $27,000.00 against plaintiff's tax liabilities. As of the date of the Stipulation of Facts, June 1, 1983, the United States had not initiated a suit to enforce its levy against Western. Although plaintiff has asked the Court for relief in the full amount of the account receivable, $102,544.89, the Court notes that plaintiff has received a credit against the tax liability in the amount of $27,000.00.

Plaintiff cites the United States Supreme Court's decision in *United States v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), to support the propo-sition that personal property of the debtor needed in reorganization remains in the debtor's estate. By analogy, the plaintiff claims that the United States must credit the amount of the Western account receivable against plaintiff's tax liability. Plaintiff contends that such a credit would reduce the amount of plaintiff's liabilities, facilitating the debtor-in-possession's reorganization. Noting that the Internal Revenue Code requires that seized property be advertised and sold as soon as practicable after seizure of the property, plaintiff asserts that the IRS' failure to sell the property or to bring suit to enforce the levy should result in the United States assuming all risks of collecting the full amount of the value of the account receivable. *See,* I.R.C. §§ 6335(b)–(d) (1976).

Additionally, plaintiff argues that the effect of the payment agreement reached by the IRS and Western resulted in plaintiff losing all standing to pursue collection of the account receivable. Plaintiff buttresses this contention by citing I.R.C. Section 6332(d) which discharges the party in possession of property levied upon by the IRS from any liability to the taxpayer regarding the property surrendered in honoring the levy. Plaintiff maintains that by reaching an agreement by which the account receivable would be paid to the IRS, the United States had exercised full dominion and control over the account receivable. Plaintiff cites *United States v. Pittman,* 449 F.2d 623, 626 (7th Cir.1971), a decision of the United States Court of Appeals for the Seventh Circuit, in support of its position. In *Pittman,* the IRS levied upon one of a debtor-taxpayer's parcels of real property, collecting the rentals of the property without the debtor's participation. The IRS provided notice of their action to the debtor and to the lessees of the property. After the rental agreement went into default and the property deteriorated, the IRS levied upon other properties of the taxpayer. The IRS credited only the amount of the rent actually collected against the debtor's tax liabilities. Despite the IRS' failure to sell the property, the *Pittman* court held that

the IRS had actually seized the property through the IRS' exercise of dominion and control over the property. The *Pittman* court also held that the taxpayer should receive a credit against the tax liability equal to the value of the property at the time of the IRS' seizure.

The government maintains that the IRS must have received payment of a tax before a taxpayer receives credit, and distinguishes voluntary and involuntary payments, claiming plaintiff has made neither. Stating debtor has not claimed to have made a voluntary payment, the United States cites *Bruno v. United States,* 547 F.2d 71 (8th Cir.1976), as authority that a taxpayer must make voluntary payments in money or its equivalent and receipt of payment is the date of payment. Additionally, the United States contends that the IRS is under no obligation to accept payment in property other than legal tender. *Calafut v. United States,* 277 F.Supp. 266 (M.D.Pa.1967). Addressing involuntary payments, the government asserts that no statutes or case law exist supporting the proposition that service of a notice of levy results in a payment when the levied-upon property has not been surrendered, also citing *United States v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), as authority for the opposite conclusion. The authorities cited by the United States do not support its assertions. In *Bruno, supra,* the court was concerned with the applicability of statutes of limitation for recovery of federal revenue taxes allegedly erroneously collected and also with proper compliance relative to the terms of a statute under which the sovereign had consented to be sued. The *Bruno* court certainly did not address voluntary payments in any manner which would support the proposition the IRS espouses.

The issue here appears to be one of first impression. A debtor-taxpayer seeks a credit against tax liability for funds not in its power to pay. The United States opposes giving a credit for funds it has not received, although the IRS had completed arrangements for payment. The United States is correct in asserting that no case law exists holding that service of notice of a levy on property embodies a payment to the IRS if the IRS has not received the property. If, however, the actions of the IRS constitute a taking in this instance, case law does exist which would require a turnover of the property to the debtor-taxpayer. *United States v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 2316–17, 76 L.Ed.2d 515 (1983) (property seized under IRS prepetition levy subject to turnover order); *In re Hudson Valley Ambulance Service, Inc.,* 11 B.R. 860, 865–66 (Bkrtcy.S.D.N.Y.1981) (accounts receivable subject to IRS levy governed by 11 U.S.C. § 542 turnover provision as long as IRS adequately protected). In the instant case, plaintiff does not ask that the account receivable be brought back into the estate under 11 U.S.C. Section 542 but maintains that reorganization will be best facilitated by crediting the value of the account receivable against plaintiff's tax liability.

The court in *United States v. Pittman,* 449 F.2d 623, 627–28 (7th Cir.1971), required the IRS to credit against a debtor-taxpayer's tax liability the value of a parcel of land the IRS levied upon in addition to the amount of rentals the IRS collected from the lessees of the property. The viability of *Pittman* as precedent, however, may be in doubt as a result of the United States Supreme Court's decision in *United States v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The *Whiting Pools* court held that property remains in the debtor's estate until such time as a sale occurs under I.R.C. Sections 6335(b), (d) following an IRS levy on the property, notice of levy and notice of sale. Contrastingly, the *Pittman* court premised its holding by stating that a valid levy under I.R.C. Section 6331(a) is " 'an absolute appropriation in law', and a seizure of the property levied upon, tantamount to a transfer of ownership." *United States v. Pittman,* 449 F.2d 623, 626 (7th Cir.1971) *quoting United States v. Sullivan,* 333 F.2d 100, 116 (3rd Cir.1964). The *Pittman* court held that because the IRS had seized dominion and control over the property, going well beyond

mere service of notice of levy, the Fifth Amendment to the United States Constitution required the IRS to give the debtor a credit against tax liability. *United States v. Pittman,* 449 F.2d 623, 626 (7th Cir.1971). This Court is of the opinion that *Pittman* remains viable as precedent in that the ruling in *Whiting Pools* would not destroy the foundation upon which the *Pittman* decision rests.

In the instant case, the IRS went well beyond a mere service of levy. With plaintiff's help, the IRS located the Western account receivable. The IRS entered into an agreement with Western for payment of the account directly to the IRS without plaintiff's participation. The IRS did not seek to sell the account receivable as it was required to do. I.R.C. §§ 6335(b), (d) (1976). Section 6335(b) provides that as soon as practicable after seizure of the property the IRS must give notice of sale of the property. The Internal Revenue Code defines "levy" as seizure by any means. I.R.C. § 6331(b) (Supp.1982). Thus, the IRS should have given notice of a sale of the account receivable soon after its levy on the account. Instead, the IRS elected to enter into a payment agreement with Western. The time of the sale must not be later than forty days from the time of giving public notice of sale. I.R.C. § 6335(d) (1976). There can be no serious doubt that the IRS levy on the account receivable in Western's hands amounted to a seizure. Nearly ten months elapsed from the date of the IRS levy on the account receivable and the date of the Stipulation of the Facts. The IRS has provided no reason for its failure to sell the account receivable.

When the IRS levied on the account receivable and subsequently entered into a payment agreement with Western, the law prohibited plaintiff from pursuing Western for the account. I.R.C. § 6332(d) (1976). Additionally, upon Western's failure to surrender the property, Western became liable to the United States for the value of the property not surrendered, plus interest from the date of the levy. I.R.C. § 6332(c)(1) (Supp.1982). In addition, there is no indication that the government advised the plaintiff of such default.

Because of the IRS' exercise of dominion and control over the account receivable in that it failed to proceed with a sale, and failed to proceed to collect the account receivable when Western defaulted, plaintiff should be granted a credit against its tax liability in the amount of the value of the account receivable levied upon by the IRS. Applying the same reasoning, the conclusion must be reached that the IRS may not claim any interest on the amount represented by the account receivable against plaintiff herein after August 16, 1982.

An appropriate Order will enter.